DECISION AND JOURNAL ENTRY
Defendant Gilbert Bybee appeals his convictions in the Summit County Court of Common Pleas on two counts of trafficking in cocaine. We affirm in part and reverse in part.
 I.
On April 22, 1999, Defendant was indicted on two counts of trafficking in cocaine, in violation of R.C. 2925.03(A). The charges stemmed from two separate drug buys by police informants. Defendant pleaded not guilty.
A jury trial was held on July 27 and 28, 1999. The State presented the testimony of several law enforcement officers, a chemist employed by the United States Drug Enforcement Agency ("DEA"), and one of the informants. Defendant presented no evidence. After deliberating, the jury found Defendant guilty on both counts. The trial court sentenced Defendant to an aggregate prison term of nine years. Defendant timely appealed to this court.
 II.
Defendant asserts eight assignments of error. We will address each in due course, consolidating related assignments of error and rearranging their order.
 A. Manifest Weight of the Evidence
Defendant argues in his first and second assignments of error that his convictions for trafficking in cocaine are against the manifest weight of the evidence. We disagree.
When a defendant asserts that his conviction is against the manifest weight of the evidence,
 an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.
 State v. Otten (1986), 33 Ohio App.3d 339, 340. This discretionary power should be invoked only in extraordinary circumstances when the evidence presented weighs heavily in favor of the defendant. Id.
R.C. 2925.03(A) states: "No person shall knowingly sell or offer to sell a controlled substance." If the quantity of drugs involved is more than ten grams but is not more than twenty-five grams of crack cocaine, the offense is a second degree felony and requires a prison term. R.C. 2925.03(C)(4)(e). If the quantity of crack cocaine is more than one gram but is not more than five grams, the offense is a fourth degree felony with a presumption of a prison term. R.C. 2925.03(C)(4)(c).
 First Assignment of Error THE CONVICTION ON COUNT ONE IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Defendant's first assignment of error deals with Count One of the indictment, a second degree felony under R.C.2925.03(C)(4)(e). At trial, the following evidence was produced: On January 22, 1999, a police informant, Curtis Greer (a.k.a. Lucky), called Defendant's residence and spoke to Defendant's girlfriend. Greer told her that he wanted to purchase one ounce of crack cocaine, and she told him to come over.
Greer met with officers from the Akron Police Department and a DEA agent. Greer was searched, and no money or drugs were found. He was fitted with a wire, given $1,200, and driven to an intersection near Defendant's house in Akron, Ohio. Greer got out of the vehicle, went to Defendant's house, and knocked on the door. Defendant's girlfriend answered and admitted him into the house.
When he saw Defendant, Greer asked for one ounce of cocaine. Defendant said that he would have to wait, because the cocaine was still in powder form and had to be put into crack form. Greer then said he was going to the store and would return. He met the police officers in their vehicle to reaffirm their plans. Ten to fifteen minutes later, Greer returned to Defendant's house. When he got there, he paid the $1,200 to Defendant, who gave him crack cocaine in a baggie.
Greer left and returned to the officers' vehicle. He was taken to another location, where he was searched. The search produced only the crack cocaine Greer purchased from Defendant. Testing confirmed that the substance purchased by Greer was 21.8 grams of cocaine in crack form.
Defendant argues that the conviction is against the manifest weight of the evidence because Greer had a felony record, the tapes of the drug buy are full of static, the police officers did not perform a cavity search on Greer before or after the drug buy, and there are inconsistencies between the testimony of Greer and of the police officers and the DEA agent. However, the jury was entitled to believe the officers and Greer. This is not a case where the evidence weighs heavily in favor of Defendant. The first assignment of error is overruled.
 Second Assignment of Error THE CONVICTION ON COUNT TWO IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.
Defendant's second assignment of error concerns Count Two, a fourth degree felony trafficking in cocaine under R.C.2925.03(C)(4)(c). According to the testimony at trial, on February 22, 1999, another police informant, Dennis Nolan, met police officers near Defendant's house. He was searched, and nothing was found. After being given $300 for the drug buy and fitted with a wire, Nolan went to Defendant's house and knocked on the door. He was admitted and asked for Defendant. When Defendant came, Nolan requested as much crack as he could buy for $300. Defendant left the room and returned with a rock of crack cocaine. Nolan took the crack cocaine, gave Defendant the money, and left. Nolan then returned to the police officers' vehicle and turned over the crack cocaine. He was searched, and nothing other than the crack cocaine he had just purchased was found. Subsequent testing revealed that the substance was 2.8 grams of crack cocaine.
Defendant argues that the conviction was against the manifest weight of the evidence because Nolan was a felon, the tape of the drug buy was filled with static, and the police officers and Nolan could not definitively identify an exhibit containing crack cocaine as the same substance purchased that day. Again, the evidence does not weigh heavily in favor of Defendant. The conviction was not against the manifest weight of the evidence. The second assignment of error is overruled.
 B. Prosecutorial Misconduct Third Assignment of Error THE TRIAL COURT ERRED TO THE PREJUDICE OF [DEFENDANT] BY OVERRULING THE OBJECTION DURING THE STATE'S CLOSING ARGUMENT AFTER THE STATE HAD COMMENTED ON [DEFENDANT'S] FAILURE TO TESTIFY IN HIS OWN DEFENSE.
In his third assignment of error, Defendant argues that a portion of the State's closing argument deprived him of a fair trial. During the State's rebuttal closing argument, the prosecutor stated:
 I want you to keep in mind one important thing, too. Absolutely, constitutional right that the State has to prove beyond a reasonable doubt the defendant is guilty, that the defendant does not have to put on any evidence. That doesn't mean he can't.
[Counsel for Defendant]: Objection.
THE COURT: Overruled.
The prosecutor then outlined several areas in which Defendant's counsel had made arguments but presented no evidence. Defendant argues that the prosecutor's statement was a comment on his constitutional right to refuse to testify.
Defendant's argument lacks merit. "[S]tatements made by the prosecutor to the effect that the evidence against appellant was uncontradicted and unrefuted does not constitute a comment by the prosecutor upon the failure of the defendant to testify, prejudicial to appellant's right to a fair trial." State v.Lockett (1976), 49 Ohio St.2d 48, 65, vacated on other grounds (1978), 438 U.S. 586, 57 L.Ed.2d 973. See, also, State v. Webb
(1994), 70 Ohio St.3d 325, 329; State v. Ferguson (1983), 5 Ohio St.3d 160,163. The prosecutor's statements in the case at bar fall within the ambit of commenting on the State's case being uncontradicted. Viewing the prosecutor's closing argument in its entirety, we find that Defendant was not materially prejudiced. See State v. Hill (1996), 75 Ohio St.3d 195, 204. Defendant's third assignment of error is overruled.
 C. Sentencing Issues Sixth Assignment of Error THE TRIAL COURT ERRED TO THE PREJUDICE OF [DEFENDANT] BY SENTENCING [DEFENDANT] TO THE MAXIMUM PRISON TERM ON COUNT ONE.
 Seventh Assignment of Error THE TRIAL COURT ERRED TO THE PREJUDICE OF [DEFENDANT] BY SENTENCING [DEFENDANT] TO CONSECUTIVE TERMS OF IMPRISONMENT. THIS IS A MOTION FOR LEAVE TO APPEAL UNDER R.C. 2953.08(C) AND APP.R. 5(C)(2).
Defendant's sixth and seventh assignments of error deal with the sentence imposed by the trial court. On Count One, a second degree felony, the trial court imposed an eight year prison term, the maximum term permitted. On Count two, a fourth degree felony, the trial court imposed a one year prison term. The trial court also ordered that the two terms be served consecutively, for an aggregate term of nine years. Defendant argues that the trial court did not comply with the statutory requirements of R.C. 2929.14. Defendant's argument is well taken.
Under R.C. 2929.14(C), a trial court may only impose the maximum prison term on a defendant who meets one of four criteria. The only two criteria relevant to this appeal are whether the defendant "committed the worst form of the offense" or "pose[s] the greatest likelihood of committing future crimes[.]" Id. In order for the sentence to withstand scrutiny on appeal, the trial court must make a finding with respect to one of the four criteria and give reasons for that finding. R.C. 2929.19(B)(2)(d).
Similarly, R.C. 2929.14(E)(4) requires a trial court to make three findings before prison terms may be imposed consecutively.
 [T]he court may require the offender to serve the prison terms consecutively if the court finds [1] that the consecutive service is necessary to protect the public from future crime or to punish the offender and [2] that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and [3] if the court also finds any of the following:
 (a) The offender committed the multiple offenses while the offender was awaiting trial or sentencing, was under a sanction imposed pursuant to section 2929.16, 2929.17, or 2929.18 of the Revised Code, or was under post-release control for a prior offense.
 (b) The harm caused by the multiple offenses was so great or unusual that no single prison term for any of the offenses committed as part of a single course of conduct adequately reflects the seriousness of the offender's conduct.
 (c) The offender's history of criminal conduct demonstrates that consecutive sentences are necessary to protect the public from future crime by the offender.
 Id. The trial court must also give "its reasons for imposing the consecutive sentences[.]" R.C. 2929.19(B)(2)(c).
Previously, this court had held that a talismanic recitation of the required findings was not necessary. State v. Blondheim
(May 27, 1998), Summit App. No. 18594, unreported, at 8-9. So long as there was a basis for the required findings to have been made, the sentence imposed by the trial court was not disturbed. See id.; State v. Miller (Apr. 29, 1998), Summit App. No. 18645, unreported, at 4-5; State v. Crangle (Aug. 6, 1997), Summit App. No. 18268, unreported, at 3. However, the Ohio Supreme Court disapproved of Blondheim, Miller, and Crangle in State v. Edmonson
(1999), 86 Ohio St.3d 324. Under Edmonson, a sentencing court must make the required findings for deviations under R.C. 2929.14. See id. at 328, 329.
The trial court made the following findings at the sentencing hearing:
 The Court has reviewed the arrest record which has been provided to the prosecution. The Court notes multiple criminal offenses[.]
* * *
 * * * Based on the defendant's record as corrected by the defendant, based on the facts and circumstances of this case, the Court finds that the defendant is a multiple career offender. Court further finds that based on the circumstances and the amount of the drug involved, failure to accept responsibility, failure to indicate remorse, likelihood to re-offend, Court imposes a sentence for the offense of trafficking in cocaine, felony of the second degree, of eight years of definite term incarceration in the state penal system.
 As to the fourth degree trafficking in cocaine, this Court imposes a sentence of twelve months of definite term incarceration. Those sentences are to be served consecutively and not concurrently.
 Court finds any lesser sentence would demean the offense and the seriousness of the conduct in regard to the welfare of the citizens of this community.
The trial court repeated the essence of these findings in its journal entry.
We conclude that the sentence imposed by the trial court does not meet the requirements of R.C. 2929.14(C) and (E)(4) andEdmonson. The trial court did not make either of the required findings under R.C. 2929.14(C) justifying a maximum sentence of eight years on the second degree felony. Also, none of the findings required for the imposition of consecutive sentences appears in the record. Accordingly, we must reverse the sentence imposed by the trial court and remand for resentencing in accordance with Edmonson. The sixth and seventh assignments of error are sustained.
 Fourth Assignment of Error THE TRIAL COURT ERRED TO THE PREJUDICE OF [DEFENDANT] BY NOT COMPLYING WITH R.C. 2929.19(B)(3) CONCERNING POST RELEASE CONTROL AND "BAD TIME" ENHANCEMENTS.
Defendant argues in his fourth assignment of error that the trial court did not notify him of the imposition of post-release control under R.C. 2929.19(B)(3).[1] Based on the resolution of the sixth and seventh assignments of error and the attendant remand, this assignment of error is moot. App.R. 12(A)(1)(c).
 Fifth Assignment of Error THE TRIAL COURT ERRED TO THE PREJUDICE OF [DEFENDANT] BY IMPOSING A MANDATORY FINE OF $7,500.00 ON COUNT ONE EVEN THOUGH THE TRIAL COURT FOUND [DEFENDANT] TO BE INDIGENT.
For his fifth assignment of error, Defendant asserts that the trial court's imposition of a mandatory fine was erroneous because the trial court had found him to be indigent for purposes of obtaining appellate counsel. We disagree.
A conviction for a second degree felony under R.C. Chapter 2925 carries a mandatory fine of $7,500. See R.C.2929.18(A)(3)(b) and (B)(1).
 If an offender alleges in an affidavit filed with the court prior to sentencing that the offender is indigent and unable to pay the mandatory fine and if the court determines the offender is an indigent person and is unable to pay the mandatory fine described in this division, the court shall not impose the mandatory fine upon the offender.
R.C. 2929.18(B)(1). A finding by a trial court that a defendant is indigent for the purpose of appointing counsel is distinct from a finding with regard to mandatory fines:
 The basis for requiring a determination that the defendant is unable to pay a mandatory fine when the trial court previously found the defendant to be indigent for purposes of receiving appointed counsel is simple. Many criminal defendants, even those who have steady income, are not able to raise sufficient funds to pay the retainer fee required by private counsel before counsel will make an initial appearance. This difference is even more evident in cases where the defendant has to utilize his financial resources to raise sufficient bond money in order to be released from jail. In contrast, the payment of a mandatory fine over a period of time is not equivalent to the immediate need for legal representation at the initiation of criminal proceedings.
 State v. Powell (1992), 78 Ohio App.3d 784, 789-90.
In the case at bar, Defendant did not file an affidavit prior to sentencing. After a cursory inquiry while Defendant was not under oath, the trial court found him to be indigent for the purpose of appointing appellate counsel. The trial court's inquiry was not a substitute for the requirement of an affidavit under R.C. 2929.18(B)(1). Accordingly, the imposition of the mandatory fine was not erroneous. The fifth assignment of error is overruled.
 D. Effective Assistance of Counsel Eighth Assignment of Error [DEFENDANT] WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL IN VIOLATION OF THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.
In his eighth assignment of error, Defendant contends that his trial counsel was ineffective. He points to two matters on which he rests his argument: (1) counsel's failure to object to statements relating to a drug rehabilitation program, and (2) counsel's failure to file an affidavit demonstrating Defendant's indigency prior to sentencing. His contentions are not well taken.
A two-step process is employed in determining whether the right to effective counsel has been violated.
 First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.
 Strickland v. Washington (1984), 466 U.S. 668, 687,80 L.Ed.2d 674, 693. In demonstrating prejudice, the defendant must prove that "there exists a reasonable probability that, were it not for counsel's errors, the result of the trial would have been different." State v. Bradley (1989), 42 Ohio St.3d 136, paragraph three of the syllabus. In addition, the court must evaluate "the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." Strickland,466 U.S. at 690, 80 L.Ed.2d at 695. The defendant has the burden of proof, and must overcome the strong presumption that counsel's performance was adequate and that counsel's action might be sound trial strategy. State v. Smith (1985),17 Ohio St.3d 98, 100.
Defendant's first argument relates to statements about the Oriana House, a nonprofit community corrections agency in Akron, Ohio. Part of the Oriana House's program involves confinement and rehabilitation for drug offenses. During voir dire, one of the jurors, Mr. Franklin, volunteered in front of the other potential jurors that he was employed as a caseworker at the Oriana House and that he knew Defendant because he had been a resident of the facility. At a subsequent side bar involving Mr. Franklin, Defendant objected, arguing that the entire jury pool was tainted as a result of Mr. Franklin's statement. Mr. Franklin was excused, but no other action was taken on the record with regard to his statement.
During the trial, Dennis Nolan, the confidential informant for the February drug buy, testified as follows:
 Q [by prosecutor]. Okay. So you get arrested for an offense and where is this drug court program?
A [by Nolan]. The Oriana House.
 Q. Okay. And who does it? Is it done by the Court of Common Pleas or the Municipal Court?
 A. It's done through Akron court and the Oriana House. I have a probation officer now and a caseworker I have to report to once a week.
No objection was made to Nolan's testimony.
We conclude that Defendant has not demonstrated prejudice from his trial counsel's failure to object to Nolan's statements regarding the Oriana House. That portion of Nolan's testimony was self-impeaching, revealing Nolan to be a drug user who made a deal with the police for a lesser penalty. There was abundant testimony from the confidential informants and law enforcement officers that Defendant sold cocaine on the two occasions at issue. We cannot say that, but for Nolan's testimony, there is a reasonable possibility that the outcome of the trial would have been different.
Defendant's second argument is that trial counsel was ineffective for failing to file an affidavit demonstrating his indigency prior to sentencing. He contends that if an affidavit had been filed the trial court would not have imposed the mandatory fine of $7,500. We conclude that Defendant has not demonstrated that he was prejudiced by counsel's failure to file the affidavit. See State v. Williams (1995), 105 Ohio App.3d 471,482-83.
Defendant was not deprived of his constitutional right to effective assistance of counsel. Accordingly, the eighth assignment of error is overruled.
 III.
The sixth and seventh assignments of error are sustained, and the fourth assignment of error is moot. The remaining assignments of error are overruled. The judgment of the Summit County Court of Common Pleas is affirmed in part and reversed in part, and the cause is remanded for further proceedings consistent with this opinion.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the County of Summit, Court of Common Pleas, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E).
Costs taxed equally to both parties.
Exceptions.
 ___________________________ LYNN C. SLABY
FOR THE COURT, BATCHELDER, P. J., WHITMORE, J., CONCUR.
[1] Defendant also argues that the trial court did not notify him of the potential imposition of "bad time" under R.C. 2967.11. The Ohio Supreme Court recently held that R.C. 2967.11 is unconstitutional. State ex rel. Bray v. Russell (2000), 89 Ohio St.3d 132, syllabus. Because Defendant cannot have "bad time" imposed upon him under Bray, the question of whether the trial court erred by failing to notify Defendant of such is moot.